## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Beverly K. Broxterman,**

        **Plaintiff,**

v.                                **Case No. 07-2439-JWL**

**Falley's Inc.,**

        **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Beverly K. Broxterman filed suit against her former employer, Falley's Inc., alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Kansas Act Against Discrimination (KAAD), K.S.A. § 44-1001 et seq.  This matter comes before the court on defendant's motion for summary judgment (doc. 47).  As will be explained, the motion is granted in part and denied in part.[1]

### I.     Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party.

Defendant Falley's Inc. operates grocery stores in Topeka, Kansas.  Plaintiff Beverly

---

[1]Plaintiff's motion for leave to file a surreply (doc. 57) is also pending before the court.  The court denies the motion because it is untimely.  *See* D. Kan. Rule 6.1(d)(2).  The court, however, has reviewed the surreply submitted with the motion and notes that the arguments contained therein would have no bearing on the disposition of defendant's motion as the issues raised in the surreply either have already been considered by the court and decided in plaintiff's favor regardless of the additional arguments set forth by plaintiff in the surreply or are not pertinent to the court's disposition of the motion.

Broxterman began her employment with defendant Falley's Inc. in 1989 as a secretary in the accounting department. After holding various positions with Falley's, plaintiff became the Director of Human Resources in 1999. At all times relevant to this lawsuit, plaintiff reported to Stan Edde, the President of Falley's.

Beginning in 2003, plaintiff became concerned that she was earning lower wages than her male counterparts in other Director positions within the Falley's organization and she contends that she believed the pay disparity was based on her gender. At the same time, plaintiff became concerned that, unlike certain male Directors, she was denied the use of a company car and she contends that Falley's denied her a company car on the basis of her gender. In March 2003, plaintiff had a discussion with Mr. Edde during her annual performance evaluation. According to plaintiff, she told Mr. Edde during this meeting that she believed she was treated less favorably than male Directors with respect to her compensation and the issuance of a company car. Plaintiff contends that Mr. Edde, in response, acknowledged that her wages were "lower than other male employees in like or similar positions," that the pay disparity was the "fault" of prior management and that he was placing plaintiff on a "fast track" to "rectify" the situation.

In November 2003, plaintiff attended a meeting with Mr. Edde, Mario Chavez (Falley's Senior Vice President of Operations) and John Rolfe (Falley's Vice President of Meat Operations) , during which Mr. Edde allegedly joked that plaintiff's wages were lower than the wages of a "lower level associate." According to plaintiff, Mr. Rolfe approached her at the conclusion of the meeting and asked whether Mr. Edde's comment about plaintiff's wages was true. Plaintiff advised Mr. Rolfe that it was true and told Mr. Rolfe that she believed that the

disparity was based on her gender.  Plaintiff contends that Mr. Rolfe indicated that he had believed her wages were equal to the wages of other Directors, that "it wasn't right" that her wages were lower and that he "was going to try to get it fixed."  Plaintiff also contends that Mr. Chavez similarly approached her after the meeting and told her that he had not been aware that her wages were lower than those of other Directors and that he was "going to get the situation rectified."

On December 6, 2003, plaintiff had a discussion with Mr. Chavez about the salary of another female employee, Kathy Finley.  Ms. Finley was hired by Falley's as a First Assistant Manager at the same time that a male employee was hired as a Second Assistant Manager. According to plaintiff, Ms. Finley was paid considerably less than the male employee despite the fact that Ms. Finley, as a First Assistant Manager, had supervisory authority over the male employee.  Plaintiff contends that she approached Mr. Chavez about paying Ms. Finley backpay for the difference between Ms. Finley's salary and the salary of the male employee and that she could not "participate in the sexual discrimination" that Falley's was "forcing [her] to participate in."  Plaintiff further contends that she advised Mr. Chavez that Mr. Edde had refused to rectify the situation on the grounds that paying Ms. Finley back wages might prevent Falley's from achieving budget, which would negatively affect bonuses.  According to plaintiff, Mr. Chavez agreed to sign paperwork authorizing a wage increase for Ms. Finley but cautioned plaintiff that she would suffer "severe consequences" from Mr. Edde if he discovered that plaintiff had successfully obtained an increase for Ms. Finley without his approval.  Plaintiff decided against submitting the paperwork and made the decision to resign her employment "within moments"

3

of her discussion with Mr. Chavez.

Later that evening, plaintiff attended defendant's holiday party–a party attended by management and executives of both Falley's and Associated Wholesale Grocers (AWG), totaling more than 150 people.  During the party, plaintiff went to the microphone and announced to all attendees that she was resigning her employment with Falley's because she believed that the company's practices were "personally and professionally intolerable."  According to plaintiff, she announced her resignation in that manner in part to embarrass Mr. Edde and she testified that he turned "bright red" at the announcement.  The following day, plaintiff submitted her written resignation to Mr. Edde.  In that letter, plaintiff offered to remain in her position for 60 days.  By letter dated December 8, 2003, Mr. Edde accepted plaintiff's resignation effective December 6, 2003, thereby rejecting plaintiff's offer to remain employed for 60 days.

On December 22, 2003, plaintiff met with Mr. Edde at the request of the Vice President of Human Resources at AWG.  During that meeting, plaintiff explained to Mr. Edde the reasons for her resignation, including her belief that her wages were lower than those paid to male employees in similar positions and her belief that she had been denied a company car on the basis of her gender.  According to plaintiff, she told Mr. Edde during this meeting that she wanted her job back and she wanted him to correct the wage discrepancy.  Plaintiff asserts that Mr. Edde replied that "too much had happened, that that wasn't going to happen."  In January 2004, defendant formally advertised the vacancy created by plaintiff's resignation.  Plaintiff submitted an application for the position and defendant declined to hire plaintiff.

Additional facts will be related, as necessary, in connection with the court's analysis of

4

defendant's motion and plaintiff's particular claims.

**Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *Garrison v. Gambro, Inc.*,

428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III.    Gender Discrimination Claims

In the pretrial order, plaintiff asserts that her compensation was lower than that of comparable male employees at the director level and that the disparity was based on her gender. She further asserts that defendant denied her the use of a company car based on her gender. Defendant moves for summary judgment on both claims.  With respect to plaintiff's pay claim, defendant contends that it set plaintiff's salary consistent with the manner it which it sets the salaries of all directors, based on business-related factors including the specific duties of the

particular director position and the qualifications, education, experience and salary history of the individual holding the director position.  With respect to the issuance of company cars, defendant contends that company cars were provided only to those employees who were required to visit stores on a regular basis and, accordingly, who drove a significant number of miles in the performance of their job duties.  Defendant contends that plaintiff's position did not require regular store visits.

To survive defendant's motion, plaintiff must present sufficient evidence from which a reasonable jury could conclude that plaintiff's gender was a motivating factor in setting her compensation and denying her a company car or from which a jury could reasonably conclude that defendant's proffered reasons for its actions are unworthy of belief.  *See Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1225 (10th Cir. 2008) (describing both mixed-motive and pretext methods of proof).[2]  The court turns first to plaintiff's claim concerning her compensation and finds that the evidence in the record, viewed in the light most favorable to plaintiff, is sufficient to permit a jury to find in plaintiff's favor.  According to plaintiff, Mr. Edde, in March 2003, acknowledged that plaintiff's compensation was lower than that of male employees in similar positions, explained that the disparity was the "fault" of prior management

---

[2]In their summary judgment response, plaintiff emphasizes that she is relying on a "mixed motive" theory of proof such that she is not required to show pretext or follow the more traditional *McDonnell Douglas* analysis.  The distinction at this juncture is not critical and, for purposes of analyzing defendant's motion, the court simply assesses whether the evidence is sufficient to permit a jury to conclude that plaintiff's gender was a motivating factor in the adverse actions or that defendant's proffered reasons for its actions are unworthy of belief.  *See Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1225-26 (10th Cir. 2008).

and promised to place plaintiff on the "fast track" to remedy the disparity. These comments, taken together, belie defendant's contention that plaintiff's salary was based on business-related factors. Indeed, the comments suggest that no legitimate basis existed for the disparity between plaintiff's compensation and her male counterparts (hence the alleged need to "remedy" the situation). Plaintiff's evidence concerning her conversation with Mario Chavez, defendant's Senior Vice President of Operations, strengthens her claim. According to plaintiff, Mr. Chavez expressed surprise when he learned that her compensation was lower than that of other directors and promised to rectify the situation. These comments, if believed, again suggest that plaintiff's salary, contrary to defendant's contention, was not based on business-related factors. Because plaintiff's evidence tends to show that defendant's explanation for plaintiff's compensation is unworthy of belief, she is entitled to a jury trial on this claim.[3]

The court also concludes that genuine issues of material fact exist concerning plaintiff's claim that she was denied the use of a company car based on her gender. Plaintiff's evidence reflects that defendant has provided three different explanations for plaintiff not receiving a company car. According to plaintiff, she confronted Mr. Edde about the company car issue on two occasions in 2003. Plaintiff testified that Mr. Edde, on the first occasion, told her that she

---

[3]Throughout her summary judgment response, plaintiff points to a comment allegedly made by Mr. Edde as evidence sufficient to require a jury trial on plaintiff's gender discrimination claims. Specifically, plaintiff alleges that Mr. Edde wrongfully refused to terminate the employment of a male employee accused of sexual harassment, stating "as long as he can bring in forty gross, he can harass all the women he wants." Because the court concludes that plaintiff's evidence is sufficient to survive summary judgment regardless of this comment, the court expresses no opinion on the admissibility or relevance of the comment for purposes of trial.

was not eligible for a company car because she lived too far away from the store–in other words, because her daily driving commute was too long.  In March 2003, plaintiff again raised her concern that she did not have a company car.  Plaintiff, in her sworn answers to interrogatories, stated that Mr. Edde, on that occasion, told her that she was in fact eligible for a car but that the company was ceasing the company car program and was not buying or leasing any additional cars at that point.  According to plaintiff, Mr. Edde essentially told plaintiff, "You're just too late."   In connection with its motion for summary judgment, defendant now asserts that plaintiff's position did not require her to visit stores on a regular basis.

The Tenth Circuit has indicated that a post-hoc justification given at the time of trial, which differs from the reasons given at the time of the adverse action and is unsupported by the evidence, could lead a reasonable jury to infer that the reason asserted at trial is pretextual.  *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 n.6 (10th Cir. 2000) (citing *Perfetti v. First Nat'l Bank*, 950 F.2d 449, 456 (7th Cir. 1991)); *see also Plotke v. White*, 405 F.3d 1092, 1104 (10th Cir. 2005) (holding that conflicting and changing evidence concerning the timing and reasons for termination contributes to a showing of pretext).  Here, defendant did not articulate that plaintiff's travels did not warrant the issuance of a company car until its motion for summary judgment and the explanation is in stark contrast to the previous explanations allegedly offered by Mr. Edde.  Moreover, while Mr. Edde avers that plaintiff's position required "occasional" travel but not "regular" travel, plaintiff testified that, in fact, she traveled "a great deal" in connection with various human resources functions, including the investigation of harassment complaints.  According to plaintiff, employees who traveled frequently each received a cell

phone, a credit card and a company car.  Plaintiff received a phone and a credit card–suggesting that she did travel frequently or, more to the point, that defendant perceived her as traveling frequently.  In such circumstances, the credibility of defendant's most recent explanation for denying plaintiff a company car–that plaintiff did not travel regularly–must be evaluated by a jury.[4]

## IV.   Retaliation Claim

Plaintiff also asserts a claim of retaliation, asserting that she suffered an adverse employment action as a result of her complaints of gender discrimination.  Specifically, plaintiff contends that defendant refused her December 22, 2003 "offer to return to work" in retaliation for plaintiff's complaints.  As an initial matter, defendant contends that this claim must be dismissed for lack of subject matter jurisdiction because, according to defendant, the claim is "in essence" a claim of failure to rehire.  Defendant then refers the court back to its prior memorandum and order in this case, an order resolving defendant's motion to dismiss, in which the court held that "to the extent plaintiff purports to asserts a retaliatory failure-to-rehire claim,

---

[4]Defendant contends that plaintiff's "shifting of explanations" argument is pertinent only in a pretext analysis and is irrelevant to plaintiff's mixed-motive theory.  While plaintiff asserts that she intends to rely on a mixed motive theory of proof, the court's focus at the summary judgment stage is not limited by that characterization; rather, the key at this juncture is whether plaintiff's evidence is sufficient to permit a reasonable jury to find either that discrimination was a "motivating factor" in the decision or that the employer's reason for the decision is unworthy of belief.  *See Fye v.Oklahoma Corp. Commission*, 516 F.3d 1217, 1225 (10th Cir. 2008).  In any event, the court notes that plaintiff, while urging a mixed-motive analysis, directs the court to "pretext" cases in support of her argument concerning defendant's changing explanations.

that claim is dismissed for lack of subject matter jurisdiction" and urges that plaintiff's claim concerning the events of December 22, 2003 must therefore be dismissed per the court's prior order.

Defendant has taken the court's holding entirely out of context.  The only potential failure-to-hire claim presented in the context of defendant's motion to dismiss concerned plaintiff's application in response to defendant's mid-January 2004 newspaper advertisement to fill the vacancy created by plaintiff's resignation–an application that defendant rejected. Defendant moved to dismiss that claim on the grounds that the facts underlying the claim were not set forth in plaintiff's charge of discrimination, requiring dismissal of the claim for failure to exhaust administrative remedies.  The court agreed with defendant's argument to the extent plaintiff was seeking to assert a failure-to-rehire claim based on the mid-January 2004 hiring decision.  Defendant's motion did not address in any respect the facts concerning plaintiff's December 22, 2003 offer to return to work (presumably because those allegations were included in the documents constituting plaintiff's charge such that plaintiff had exhausted her remedies). To be sure, then, plaintiff's retaliation claim concerning the events of December 22, 2003 is not subject to dismissal for lack of subject matter jurisdiction.

In any event, defendant asserts that summary judgment is appropriate on this claim because plaintiff has come forward with no evidence from which a reasonable jury could conclude that plaintiff's complaints of discrimination motivated Mr. Edde's decision to decline

11

plaintiff's return-to-work offer.[5]  To survive defendant's motion, plaintiff must present sufficient evidence from which a reasonable jury could conclude that retaliation was a motivating factor in Mr. Edde's decision or from which a jury could reasonably conclude that defendant's proffered reason for Mr. Edde's decision is unworthy of belief.  *See Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1225 (10th Cir. 2008).

The court concludes that plaintiff has come forward with evidence sufficient to survive summary judgment.  In response to plaintiff's "offer" to return to work, Mr. Edde allegedly stated that "too much has happened."  Viewed most favorably to plaintiff, the comment is sufficient to raise an inference of retaliatory motive because it was allegedly uttered within moments of plaintiff reasserting her complaints of gender discrimination.  Moreover, plaintiff's evidence reflects her repeated complaints of gender discrimination to various members of management and Mr. Edde's knowledge of those complaints.  If the jury were to credit plaintiff's evidence, it could infer that Mr. Edde's statement that "too much had happened" was intended to reference, even in part, plaintiff's persistent complaints over the course of the year.

Defendant's arguments to the contrary are not persuasive.  According to defendant, Mr. Edde's comment must obviously relate to plaintiff's conduct on the evening of December 6, 2003 when she announced her resignation at the holiday party to the embarrassment of Mr. Edde. While a jury could certainly so conclude, the court cannot as a matter of law draw that

---

[5]Defendant construes Mr. Edde's decision to decline plaintiff's "offer" to return to work as a failure-to-rehire claim and, thus, does not contend that plaintiff suffered no adverse employment action on December 22, 2003.

conclusion on the record before it.  It is unclear from the record, for example, whether plaintiff

referenced during her resignation announcement her concerns about gender discrimination such

that even if Mr. Edde's comment related solely to plaintiff's conduct at the holiday party, that

conduct may have included public complaints about discriminatory practices.  Defendant further

contends that Mr. Edde's statement is too ambiguous to support an inference of retaliation

because it bears no relationship to plaintiff's gender.  This argument, however, misses the mark

as the appropriate inquiry in the context of a retaliation claim is whether the comment bears a

relationship to plaintiff's protected activity, not the protected category underlying that activity.

For the foregoing reasons, a trial is required on plaintiff's retaliation claim.[6]

## V.      Constructive Discharge

In the pretrial order, plaintiff asserts a claim for damages in the form of lost wages based

on a constructive discharge theory.  Defendant moves for summary judgment on this claim for

damages on the grounds that no reasonable jury could conclude that plaintiff was constructively

discharged.  The court agrees that plaintiff has not come forward with sufficient facts from

---

[6]With respect to plaintiff's gender discrimination and retaliation claims, defendant contends that, as a matter of law, it cannot be held liable for discrimination or retaliation because it would have made the same decisions despite the alleged unlawful motive.  This argument is rejected.  First, defendant does not avoid liability by proving its same decision defense; rather, plaintiff's remedies are limited if defendant proves that defense.  *See* 42 U.S.C. § 2000e-5(g)(2)(B).  Second, as evidenced by this order, factual issues exist concerning defendant's motives and, thus, the court cannot conclude as a matter of law that defendant would have made the same decisions concerning plaintiff's wages, company car and return to work.

which a reasonable jury could conclude that she was constructively discharged.

A constructive discharge occurs only "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008). Accordingly, the burden on plaintiff in establishing a constructive discharge is "substantial." *Id.* (citing EEOC v. PVNF, LLC, 487 F.3d 790, 805 (10th Cir. 2007)). The court evaluates the "voluntariness of an employee's resignation under an objective, totality of the circumstances standard." *Id.* (citing *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1136 (10th Cir. 2004)).

Significantly, evidence of discrimination is not necessarily sufficient to establish a constructive discharge. Indeed, the Tenth Circuit has recently emphasized that a constructive discharge requires "something more" than conduct that amounts to a violation of Title VII. *See id.* at 981 (citing *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than conduct that amounts to actionable harassment]"); *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir. 2001), *overruled on other grounds by Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003) ("[A] finding of constructive discharge may not be based solely on a discriminatory act; there must also be aggravating factors that make staying on the job intolerable.") (internal quotation marks omitted); 1-15 *Larson on Employment Discrimination* § 15.08 (2007) ("The mere existence of discrimination will not normally constitute the kind of intolerable conditions that would make a reasonable person feel compelled to quit.")).

Applying these principles here, plaintiff has failed to produce sufficient evidence

demonstrating that her working conditions were so intolerable that she was forced to quit.
Indeed, three specific pieces of evidence in this case are fatal to her claim. First, she testified
that she made the decision to resign "within moments" of her discussion with Mr. Chavez about
Ms. Finley's wages. As the Tenth Circuit stated in *Fischer*, however, evidence that an employer
"engaged in discriminatory acts against other employees . . . is not enough to prove constructive
discharge." *Id.* at 982 ("A protest resignation, without more, does not establish constructive
discharge.") (citations omitted). Second, plaintiff offered to remain in her position for 60 days
after submitting her written resignation. In the absence of evidence that plaintiff needed to
remain in her position to qualify for a particular benefit, plaintiff's offer to remain employed for
two months greatly undermines her contention that the workplace was intolerable. *Flaherty v.
Metromail Corp.*, 2002 WL 32059735, at *2-3 (2d Cir. July 9, 2002) (90-day resignation notice
did not cut against plaintiff's constructive discharge claim where evidence showed that plaintiff
needed to work additional time to qualify for retirement benefits); *Shelar v. Ameripride Servs.
Inc.*, 2006 WL 1877010, at *9 (D. Kan. July 6, 2006) ("The fact that plaintiff was willing to
remain employed by defendant for an additional three weeks cuts against plaintiff's claim that
his working conditions were intolerable . . . . Giving several weeks notice of the date on which
one will be compelled to resign is unprecedented, in this court's experience, for a successful
constructive discharge claim."); *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376, 1394
(M.D. Ala. 1997) ("That Johnson was able to . . . give Wal-Mart three weeks notice before
leaving her position strongly suggests that the conditions to which she allegedly [was] subjected
were not intolerable."). Finally, plaintiff reapplied for her position in mid-January 2004 without

any indication from defendant that it had changed the practices that plaintiff allegedly found intolerable. *See Fischer*, 525 F.3d at 982 ("The fact that Fischer asked to rejoin the company after these incidents further undermines his contention that this alleged harassment was intolerable.").

For the foregoing reasons, the court grants summary judgment in favor of defendant on plaintiff's theory that she was constructively discharged from her employment.

## VI.    Punitive Damages Claim

Finally, defendant moves for summary judgment on plaintiff's claim for punitive damages on the grounds that, pursuant to *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), it cannot be held vicariously liable for punitive damages arising out of the alleged conduct of Mr. Edde or any other managerial employees. *Kolstad* "bars an employer's liability for punitive damages if the manager's challenged actions were contrary to the employer's good-faith effort to comply" with federal anti-discrimination laws. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1189 (10th Cir. 2007). To avail itself of *Kolstad*'s good-faith-compliance standard, defendant must at least adopt antidiscrimination policies; "make a good faith effort to educate its employees about these policies and the statutory prohibitions"; and "make good faith efforts to enforce" an anti-discrimination policy. *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) (citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000)).

While it is undisputed that defendant adopted anti-discrimination policies, the record is devoid of evidence concerning whether defendant made any effort to educate or train its

employees about those policies.  In support of its blanket assertion that defendant educated its employees on its policies, defendant points to plaintiff's deposition testimony in which she admits that she was familiar with the policies.  As plaintiff testified, however, she was familiar with those policies because, as Director of Human Resources, it was "her job" to be familiar with defendant's anti-discrimination policies.  There is no evidence in the record that Mr. Edde or any other managerial employees were educated about defendant's anti-discrimination policies or the pertinent statutory prohibitions. Defendant, then, has not shown that it is entitled to summary judgment by virtue of the *Kolstad* defense.  *See id.*

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc.47) is granted in part and denied in part and plaintiff's motion for leave to file a surreply (doc. 57) is denied.

**IT IS SO ORDERED.**

Dated this 3rd  day of October, 2008, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge